UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY K. MRLA,

              Plaintiff,                                Case No. 15-cv-13370
                                                        Hon. Mark A. Goldsmith

vs.

FEDERAL NATIONAL
MORTGAGE ASSOCIATION,
et al.,

              Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (Dkt. 8)

This is a mortgage foreclosure case. Plaintiff accuses Defendants of a litany of violations of federal statutes and regulations, as well as state statutes and the common law, which Defendants allegedly committed in the course of servicing her loan and foreclosing on the property. In lieu of an answer, Defendants filed a motion to dismiss (Dkt. 8). For the reasons stated below, all of Plaintiff's claims, except for her breach of contract claim, are dismissed.

### I.  BACKGROUND

On October 19, 2005, Plaintiff refinanced her Allen Park, Michigan, home, mortgaging it in the amount of $145,000. Compl. ¶ 10 (Dkt. 1-2). Quicken Loans was the original mortgagee, but the mortgage eventually was assigned to Defendant Federal National Mortgage Association ("Fannie Mae"), which assignment was recorded on January 9, 2013. Id. ¶¶ 10, 13. Defendant Seterus, Inc., services the mortgage. Id. ¶ 14.

At some point, Plaintiff defaulted. Id. ¶ 17; Defs. Br. at 2 (Dkt. 8). A Notice of Foreclosure, dated February 3, 2015, was published in the Detroit Legal News. Ex. 5 to Compl.,

1

at 56 (cm/ecf page).  The Notice of Foreclosure claimed that $167,138.22 was owing on the property.  Id.  Defendants initiated foreclosure, and Fannie Mae purchased the property at a foreclosure sale on March 5, 2015, for $170,470.31, the amount of the outstanding indebtedness at that time.  Compl. ¶ 34.  The redemption period was set to end on September 8, 2015, id. ¶ 35, but Plaintiff filed this action in Wayne County Circuit Court on September 4, 2015.  Defendants removed on September 24, 2015, based on diversity jurisdiction (Dkt. 1).

Plaintiff makes several claims based upon the mortgage and subsequent foreclosure.  She alleges breach of contract, wrongful foreclosure under Michigan and federal law, violations of federal notice requirements, fraudulent misrepresentation, and slander of title.  Several of these claims have multiple facets, which are analyzed separately below.

## II.  STANDARD OF DECISION

In evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief."  Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010).  To survive a motion to dismiss, a complaint must plead specific factual allegations, and not just legal conclusions, in support of each claim.  Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009).

In considering a motion to dismiss, courts may rely on the complaint, documents incorporated by reference into the complaint and integral to the plaintiff's claims, documents attached as exhibits to the complaint, and matters of public record.  Commercial Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 327, 335-336 (6th Cir. 2007).

## III.  ANALYSIS

### A.  Mich. Comp. Laws § 600.3201 et seq. Claim

Plaintiff claims that Defendants violated Mich. Comp. Laws § 600.3201 et seq.  This portion of the Revised Judicature Act governs foreclosure by advertisement.  It is not immediately clear what statutory section Plaintiff invokes, as she does not identify any one in particular.  She does claim that Defendants "fail[ed] to properly calculate the amount claimed to be due on the date of the notice of foreclosure by including amounts not rightfully incurred including late fees, attorney fees, maintenance fees, BPO/appraisal fees, title fees, publication fees, among other fees and costs wrongfully included."  Compl. ¶ 90 (emphasis added).  This appears to be a reference to Mich. Comp. Laws § 600.3212, which dictates the contents of the notice of foreclosure.[1]  In pertinent part, the statute requires the notice to contain "[t]he amount claimed to be due on the mortgage on the date of the notice."

Under Michigan law, "an excessive claim for the amount due warrants setting aside foreclosure only if it is significantly excessive or in bad faith and an attempt was made to redeem the property."  Sweet Air Inv., Inc. v. Kenney, 739 N.W.2d 656, 663 (Mich. Ct. App. 2007) (citing Flax v. Mut. Bldg. & Loan Ass'n of Bay Cnty., 165 N.W. 835 (Mich. 1917)).  Here, say Defendants, the claimed amount due was not "significantly excessive or in bad faith," nor did Plaintiff make an attempt to redeem.  Def. Br. at 6-7.

---

[1] Apart from her allegations made under the statute, Plaintiff notes that she received a reinstatement letter on February 23, 2015, which claimed a tax & interest reinstatement amount of $6,991.66, and she claims that "this amount is greatly inflated."  Id. ¶¶ 57-58.  Plaintiff asserts that this is contradicted by her payment history, which shows payments that would reduce that amount.  Id. ¶ 61.  This is not relevant, however, to Plaintiff's statutory claim regarding the notice of foreclosure.  Indeed, Plaintiff offers it only as "another indicator that Plaintiff's loan account has not been handled correctly," id. ¶ 62, and it is not referenced again later in the complaint, in which the various counts are alleged.  Notwithstanding Defendants' decision to discuss these assertions, see Defs. Br. at 6-7, the Court does not interpret these allegations as part of any legal claim.

Indeed, Plaintiff's complaint does not allege the magnitude of the alleged overstatement, let alone that it was excessive.  Under <u>Kenney</u>, this is a required element for a claim of this type. <u>Kenny</u>, 739 N.W.2d at 663.  Because a non-excessive overstatement is not actionable, Plaintiff's claim of an overstatement, without more, fails to state a plausible claim for relief.

Moreover, the overstatement must be excessive <u>and</u> the mortgagor must attempt to redeem in order for the overstatement to be actionable.  <u>Id.</u> ("Even if defendants' allegation were true, it would not warrant setting aside the foreclosure sale because no effort was made to redeem, as required by our Supreme Court[.]"); <u>Flax</u>, 165 N.W. at 839 ("The excessive claim would be a circumstance only of more or less importance according to its magnitude, or apparent want of good faith, if attempt was made to redeem afterwards."); <u>see also</u> <u>Cherney v. Fed. Nat'l Mortg. Assoc.</u>, No. 1:15-cv-711, 2016 WL 750352, at *2 (W.D. Mich. Feb. 26, 2016) (dismissing plaintiffs' claim under § 3212 because they "have not alleged that an attempt was made to redeem the property, nor have they shown that the $6,000 discrepancy is 'significantly excessive'").  Here, Plaintiff admits that she did not attempt to redeem the property.  Compl. ¶ 24.  Accordingly, the Court dismisses her state-law claim that the notice of foreclosure was defective because of the claimed amount due.

### B.  RESPA and "Regulation X" Claims

Plaintiff's claims under "Regulation X," 12 C.F.R. § 1024.41, can be broken down as follows:

- Defendants wrongfully foreclosed on her home despite her pending application for a loan modification (<u>i.e.</u>, "dual tracking"), Compl. ¶ 78;

- Defendants did not provide her with notice that she was not eligible for certain loss mitigation options or information regarding other loss mitigation options, <u>id.</u> ¶¶ 79, 85;

4

- Defendants failed to provide Plaintiff with "direct and ongoing access to servicing personnel," id. ¶ 86;

- Defendants did not investigate all possible loss mitigation options available to Plaintiff, id. ¶ 87;

- Defendants breached an enforceable loan modification agreement by foreclosing on the home, id. ¶ 88; and

- Defendants initiated foreclosure proceedings less than 120 days after Plaintiff's delinquency, id. ¶ 89.

Plaintiff also makes a single, separate claim under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., which is the statute that Regulation X implements. Specifically, she claims that she "was never notified that servicing of the Loan and/or Mortgage was sold or transferred," in violation of 12 U.S.C. § 2605(b)(1).  Compl. ¶ 98.

Defendants dispute that they violated Regulation X by making several factual assertions and attaching documents in support.  Defendants' documentary submissions purport to prove that they were no longer considering Plaintiff for a loan modification when they foreclosed.  See Modification Denial Letter, Ex. G to Def. Br. (Dkt. 8-8).  Furthermore, they offer evidence that Plaintiff was advised of her mitigation options via a letter sent by Defendant Seterus dated June 27, 2014.  See Ex. H to Def. Br (Dkt. 8-9).  Finally, regarding the RESPA violation, Defendants provide a letter showing that they gave Plaintiff notice that a new servicer was servicing the loan. See Ex. D to Def. Br. (Dkt. 8-5).

However, as this is a motion to dismiss and the complaint does not attach, or refer to, the documents provided by Defendants, this Court cannot consider those documents in resolving this motion.  See Nieman v. NLO, Inc., 108 F.3d 1546, 1554-1555 (6th Cir. 1997).

Regarding "dual tracking," Defendants argue in the alternative that Plaintiff contradicts herself:  she claims that foreclosure illegally proceeded "despite the fact that a loan modification

had been reached," Compl. ¶ 88, but this belies her earlier claim that "Defendants never permanently modified Plaintiff's loan," id. ¶ 47. They note that Plaintiff's claim that "a loan modification had been reached" also refutes her own claim that she "was not informed of her mitigation options nor given any information on how to obtain other loss mitigation assistance." Def. Br. at 8-9 (quoting Compl. ¶ 85).

Defendants also contend that, even if violations of Regulation X were established, RESPA does not provide the principal relief sought, i.e., nonmonetary relief such as setting aside the foreclosure sale or forcing a loan modification. Def. Br. at 10. Rather, RESPA provides, at most, a way to recover monetary damages. And a failure to allege any specific damages is insufficient to state a RESPA claim and warrants dismissal. Id. (citing Drew v. Kemp-Brooks, 802 F. Supp. 2d 889, 898 (E.D. Mich. 2011)).

Defendants are correct on both counts. Regarding damages, 12 C.F.R. § 1024.41(a) makes clear that RESPA — specifically, 12 U.S.C. § 2605(f) — provides the enforcement mechanism for Regulation X. RESPA limits recovery to "an amount equal to the sum of (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1)(A)-(B). "There is no provision found in RESPA under which Plaintiff can seek to have foreclosure proceedings nullified, or force Defendants to negotiate a loan modification." Caggins v. Bank of N.Y. Mellon, No. 15-11124, 2015 WL 4041350, at *2 (E.D. Mich. July 1, 2015). Thus, all Plaintiff's claims for non-monetary relief founded upon RESPA and/or Regulation X are dismissed.

Respecting Count I, in which the RESPA and Regulation X claims were made, Plaintiff's request for monetary damages are as follows, in pertinent part:

6

- Awarding Plaintiff damages for wrongful foreclosure . . . ;

- Awarding Plaintiff damages for emotional distress, indignity and humiliation;

- Awarding Plaintiff treble damages for any mortgage payments improperly converted by Defendants;

- Awarding Plaintiff attorney fees and costs . . . .

Compl. at 14-15 (Count I, prayer for relief).  In the complaint, Plaintiff further alleges that she "has suffered damages as a result of Defendants' . . . conduct, including but not limited to, loss of interest in the Subject Property, loss of marketability in the Subject Property, loss of equity in the Subject Property, the emotional distress, indignity, humiliation and the sense of outrage in undergoing a foreclosure, damage to her credit, late fees, various costs and attorney fees." Compl. ¶ 50.

However, most of Plaintiff's RESPA and Regulation X claims fail to state a claim that sufficiently connects these alleged losses to Defendants' conduct.  A complaint must allege "facts showing that damages occurred" as a result of the alleged violations.  See Kemp-Brooks, 802 F. Supp. 2d at 898 (quoting Jarbo v. BAC Home Loan Servicing, No. 10-12632, 2010 WL 5173825, at *5 (E.D. Mich. Dec. 15, 2010)) (emphasis added).  Naked claims of damages, unconnected to such facts, are not enough to state a claim.  As explained below, Plaintiff's claims suffer from this defect.

The Court dismisses Plaintiff's claim under RESPA, 12 U.S.C. § 2605(b)(1), which alleges that she "was never notified that servicing of the Loan and/or Mortgage was sold or transferred," Compl. ¶ 98, because Plaintiff does not explain how this harmed her.  And Plaintiff's allegation that Defendants failed to provide her with "direct and ongoing access to servicing personnel," Id. ¶ 86, is not alleged to have caused any damages; indeed, it is hard to see

7

how damages could have resulted, in light of her claim that she was "actively engaged in loan modification or loss mitigation alternative negotiations" when the notice of foreclosure was posted. See id. ¶ 84; see also id. ¶ 88 (claiming that Plaintiff "was in good standing under [a] loan modification agreement" during foreclosure proceedings). That claim is also dismissed. And her claim that "Defendants initiated foreclosure proceedings on Plaintiff's home less than 120 days from Plaintiff's alleged delinquency on the Mortgage," id. ¶ 89, is not alleged to have caused any particular harm. That claim, too, is dismissed.

Plaintiff's admissions that she was able to timely apply for, and entered into, a loan modification agreement, id. ¶ 88, or that the parties were "actively engaged in loan modification or loss mitigation alternative negotiations" when foreclosure proceedings began, id. ¶ 84, negate any claim that she suffered damages from Defendants' alleged failure to inform her (i) of her loss mitigation options or (ii) that she was not eligible for unspecified loss mitigation options, id. ¶¶ 79, 85. Even if Defendants shirked an initial obligation to discuss loss mitigation options with Plaintiff, Plaintiff admits that they eventually wound up either negotiating over relief or granting that relief, which precludes an allegation that Plaintiff suffered damages.

Moreover, the claims raised in paragraphs 79 and 85 of the complaint fail to state a cause of action: "Nothing in [12 C.F.R.] § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." 12 C.F.R. § 1024.41(a) (emphasis added). Rather, Regulation X "merely requires that a completed application be properly processed and considered." Houle v. Green Tree Servicing, LLC, No. 14-14654, 2015 WL 1867526, at *3 (E.D. Mich. Apr. 23, 2015). And, although a servicer is required to evaluate a borrower "for all loss mitigation options available to the borrower," 12 C.F.R. § 1024.41(c)(1)(i), there is no requirement that the servicer communicate all of these options to the borrower. A servicer need

8

only "[p]rovide the borrower with a notice in writing stating . . . which loss mitigation options, if any, it will offer to the borrower . . . ." Id. § 1024.41(c)(1)(ii). Thus, a failure to inform Plaintiff whether she was eligible for certain <u>unspecified</u> loss mitigation options is irrelevant — especially in light of her admission that Defendants did engage in loss mitigation negotiations (however disingenuously). These claims are, therefore, dismissed.

This leaves two claims under Regulation X: (i) that Defendants engaged in "dual tracking," <u>i.e.</u>, "pursuing loss mitigation options contemporaneously with active foreclosure proceedings," Compl. ¶ 78; and (ii) that Defendants foreclosed "despite the fact that a loan modification agreement had been reached between the parties and Plaintiff was in good standing under the loan modification agreement," <u>id.</u> ¶ 88.

These factual assertions cannot coexist. Either foreclosure occurred <u>during</u> negotiations for the loan modification, or foreclosure occurred <u>after</u> the loan modification was granted. Although Federal Rule of Civil Procedure 8(d)(3) permits a plaintiff to state "as many separate claims or defenses as it has, regardless of consistency," this is subject to the strictures of Rule 11(b)(3), which requires factual claims in a pleading to "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." <u>See also</u> Fed. R. Civ. P. 8, Note to 2007 Amendment ("The former Rule 8(b) and 8(e) cross-references to Rule 11 are deleted as redundant. Rule 11 applies by its own terms. The force and application of Rule 11 are not diminished by the deletion."). Accordingly, courts have held that Rule 8(d)(3)'s "alternative pleadings rule" does not cover inconsistent assertions of fact when the pleader holds the knowledge of which of the inconsistent facts is the true one. <u>See, e.g.</u>, <u>Am. Int'l Adjustment Co. v. Galvin</u>, 86 F.3d 1455, 1461 (7th Cir. 1996) ("[A] pleader may assert contradictory statements of fact only when legitimately in doubt

about the facts in question.") (citing <u>Great Lakes Higher Educ. Corp. v. Austin Bank of Chicago</u>, 837 F. Supp. 892, 894-895 (N.D. Ill. 1993) ("It is a violation of Rule 11 to withhold relevant factual evidence within the knowledge of the pleading party in order to gain the advantage of being able to plead more causes of action than are appropriate.  This is also an inappropriate application of the alternative pleadings rule.")); <u>Emkey v. Sec'y of Health & Human Servs</u>., No. 08-160V, 2009 WL 3683390, at \*15 (Fed. Ct. Cl. Oct. 20, 2009) ("A party is not free to plead any and all facts that might entitle it to relief simply because inconsistency of factual allegations is permissible under Rule 8.").

When inconsistent factual allegations are made for reasons other than the pleader's uncertainty as to which allegation was true, dismissal is appropriate.  <u>See</u> <u>Great Lakes Higher Educ. Corp.</u>, 837 F. Supp. at 895; <u>Gordon v. Matthew Bender & Co.</u>, 562 F. Supp. 1286, 1299 (N.D. Ill. 1983) (neither of two causes of action state a claim when founded upon contradictory factual allegations), <u>abrogated on other grounds recognized in</u> <u>Karkomi v. Am. Airlines, Inc.</u>, 717 F. Supp. 1340, 1345 n.6 (N.D. Ill. 1989); <u>see also</u> <u>Friendship Med. Ctr., Ltd. v. Space Rentals</u>, 62 F.R.D. 106, 112 (N.D. Ill. 1974) (factual contradiction prevented defendant from properly responding to the complaint, warranting dismissal).  Accordingly, Plaintiff's remaining claims under RESPA and Regulation X are dismissed.[2]

---

[2] Although not raised by Defendants, the Court observes Plaintiff's admission that she requested "mortgage assistance" sometime prior to September 24, 2013, and on January 14, 2014, "Defendant Seterus sent plaintiff a loan modification offer."  Compl. ¶¶ 55-56.  Yet, "[a] servicer is only required to comply with the requirements of [Regulation X] for a single complete loss mitigation application for a borrower's mortgage loan account."  12 C.F.R. § 1024.41(*i*).  Thus, any loan modification negotiations that were taking place in February 2015 appear to have been duplicative of an earlier negotiation, which relieves Defendants of the strictures of Regulation X.  Defendants would still be bound, however, by an earlier loan modification agreement that remained in force.  <u>See</u> <u>id.</u> § 1024.41(f)(2).

### C.  Truth in Lending Act Claim

The Truth In Lending Act ("TILA") requires a creditor to provide a notice to the borrower when it becomes the new owner or assignee of the borrower's debt.  See 15 U.S.C. § 1641(g).  Plaintiff claims that she was not timely notified of the loan's transfer to Fannie Mae, which occurred in January 2013.  Compl. ¶¶ 13, 93.

Defendant Seterus, the loan's servicer, argues that it is exempt from TILA by operation of statute.  See Def. Br. at 11-12.  Pursuant to 15 U.S.C. § 1640(a), only "creditors" are liable under TILA.  Indeed, "TILA expressly exempts servicers from liability unless the servicer was also a creditor or a creditor's assignee," Marais v. Chase Home Fin. LLC, 736 F.3d 711, 719 (6th Cir. 2013), and Plaintiff's complaint does not allege that Seterus was anything more than a mere servicer.  See Compl. ¶ 14.  The Court, therefore, agrees with Seterus and dismisses the TILA claim against it.

Fannie Mae concedes that it is subject to TILA, but it claims that the TILA claim is barred by the statute of limitations.  See Def. Br. at 11-12.  Under TILA, claims must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  In this case, claims Fannie Mae, the alleged violation would have occurred 30 days after the assignment of the mortgage to Fannie Mae (i.e., the last day notice could be provided).  The absolute latest that the assignment could have occurred was January 3, 2013 — the date it was recorded with the Wayne County Register of Deeds.  See Assignment of Mortgage, Ex. C to Def. Br. (Dkt. 8-4).  Thus, the statute would have expired on February 4, 2014, but the instant suit was not filed until September 4, 2015.

Correctly anticipating Plaintiff's argument that the statute should be equitably tolled, Defendants assert that equitable tolling requires Plaintiff to demonstrate Defendants' wrongful

11

concealment of their actions.  Def. Br. at 13 n.3 (citing Hamilton Cnty. Bd. of Comm'rs v. Nat'l Football League, 491 F.3d 310, 315 (6th Cir. 2007).  Plaintiff cannot demonstrate wrongful concealment, say Defendants, because the assignment was publicly recorded in the Wayne County Register of Deeds.  Id.

Defendants are correct, in that Plaintiff cannot show an entitlement to equitable tolling, and her claim against Fannie Mae is thus time-barred.  Equitable tolling is available if a plaintiff shows "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." Dayco Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389, 394 (6th Cir. 1975).  Only upon such showings does the one-year period begin running "from the date on which the borrower discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation," instead of running from the date of the violation itself.  See Thielen v. GMAC Mortg. Corp., 671 F. Supp. 2d 947, 953 (E.D. Mich. 2009) (citation omitted).  Plaintiff's complaint does not allege any wrongful conduct on the part of Defendants, let alone "wrongful concealment," which must be pleaded with particularity, see Fed. R. Civ. P. 9(b).  Plaintiff's claims under TILA are, therefore, dismissed in their entirety.

### D.  Breach of Contract Claim

In her complaint, Plaintiff alleges that "none of the correspondence received by Plaintiff contained all of the required components of Paragraph 22 of the mortgage."  Compl. ¶ 102.  Paragraph 22 of Plaintiff's mortgage provides:

> Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides

> otherwise). <u>The notice shall specify</u>: (a) the default, (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.

Compl. at 45 (cm/ecf page) (emphasis added). Plaintiff alleges that the defective notice constitutes a breach of contract by Fannie Mae. <u>Id.</u> ¶ 103.

Plaintiff's complaint states a prima facie claim for breach of contract. It establishes a contract (which Defendants concede), alleges a breach, and claims resultant damages. Defendants sole rebuttal to Plaintiff's breach-of-contract claim is fact-based: they claim that they "provided several notices which comply with the requirements" of the provision. Def. Mot. at 13-14 (citing 10/16/2014 Foreclosure Notice, Ex. F to Def. Mot. (Dkt. 8-7)). However, as this is a motion to dismiss and the complaint does not attach, or refer to, the document provided by Defendants, this Court cannot consider that document in resolving this motion.. <u>See</u> <u>Nieman</u>, 108 F.3d at 1554-1555.

Even if the Court could consider Defendants' documentary evidence, the notice contained in Exhibit F does not come close to satisfying the contract's requirements. It is true that the notice advises Plaintiff of the default. However, the notice does not "specify . . . the action required to cure the default," Mortgage ¶ 22, Compl. at 45 (cm/ecf page). It merely raises the <u>possibility</u> that some loss mitigation options may be available, and it elsewhere states, as a matter of fact, that the mortgage "will be foreclosed." Nor does the notice "specify . . . a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured," <u>id.</u> The alleged fact that the notice was sent more than 30 days prior to the foreclosure sale has nothing to do with this criterion. And, finally, the notice does not "specify . . . that failure to cure the default on or before the date specified in [the] notice may result in acceleration [of the debt]

and sale of the Property," id.  Although the notice advises that the property will be sold, it neither

mentions acceleration nor frames this warning in terms of a specific date by which the default

must be cured.

Accordingly, Defendants' motion to dismiss Plaintiff's breach of contract claim is

denied.

In addition, Plaintiff claims a breach of the implied covenant of good faith and fair

dealing for Defendants' alleged breach of Paragraph 22 of the Mortgage.  Compl. ¶ 104.

Defendant's sole objection to Plaintiff's implied covenant of good faith and fair dealing claims is

that Plaintiff cannot show the underlying breach, which is a necessary prerequisite to filing the

derivative "implied covenant" claim.  See Def. Br. at 15 (citing In re Leix Estate, 797 N.W.2d

673 (Mich. Ct. App. 2010)).  Because Defendants' motion to dismiss failed to dispose of

Plaintiff's breach-of-contract claim, this argument fails.

However, the case cited by Defendants indicates that, in fact, notwithstanding any breach,

"Michigan does not recognize a cause of action for breach of the implied covenant of good faith

and fair dealing" at all.  In re Leix Estate, 797 N.W.2d at 683; see also Fodale v. Waste Mgmt. of

Michigan, Inc., 718 N.W.2d 827, 841 (Mich. Ct. App. 2006) (same).  Accordingly, this claim is

dismissed.[3]

---

[3] Even if Michigan recognized the common law cause of action for a violation of the implied
covenant of good faith and fair dealing, a violation of Paragraph 22 of the mortgage would not
violate the implied covenant.  See, e.g., Bank of Am., NA v. Fidelity Nat'l Title Ins. Co., Nos.
311798, 312426, 313797, 316538, 2016 WL 3430535, at *9 (Mich. Ct. App. June 21, 2016) (if
covenant was recognized, it would exist only to fill gaps in the contract, i.e., when contract is not
clear and specific regarding obligations).  Defendants' alleged failure to comply with Paragraph
22 did not result from a bad-faith exercise of contractual discretion, but, rather, a complete
failure to include a fairly inflexible list of specific notifications.

Plaintiff also invoked the implied covenant of good faith and fair dealing with respect to her allegations that Defendants (i) disingenuously negotiated loss mitigation assistance with the Plaintiff; and (iii) misled plaintiff about approval and extension of loss mitigation assistance as an alternative to foreclosure.  See Compl. ¶ 105.  In addition to the fact that Michigan does not recognize a covenant of good faith and fair dealing, Plaintiff does not make a connection between these allegations — both of which her complaint frames as statutory violations — and the contractual relationship between the parties.  These claims are also dismissed.

### E.  Fraudulent Misrepresentation Claim

A federal court will examine state law to determine whether the elements of fraud have been pleaded sufficiently to state a cause of action.  See, e.g., Am. Town Ctr. v. Hall 83 Assocs., 912 F.2d 104, 109 (6th Cir. 1990); see also 5A Fed. Prac. & Proc. Civ. § 1297 (3d ed.) ("In diversity cases the law of the state in which the district court sits will control the content of the elements of a fraud claim or defense and the burden of proving fraud at trial in those cases.") (emphasis added).  In Michigan, six elements must be proven to sustain a claim of fraudulent misrepresentation:

1.  The defendant made a material representation.
2.  The representation was false.
3.  When the defendant made the representation, it knew that it was false, or the defendant made the representation recklessly, without any knowledge of its truth, and as a positive assertion.
4.  The defendant made the representation with the intention that it should be acted on by the plaintiff.
5.  The plaintiff acted in reliance on the representation.
6.  The plaintiff suffered injury due to his reliance on the representation.

Hord v. Envt'l Research Inst. of Michigan, 617 N.W.2d 543, 546 (Mich. 2000).

Plaintiff claims that Defendants made representations to her "that they [Defendants] would not begin foreclosure proceedings while the parties were actively pursuing loan

modification or other financial assistance options.  Compl. ¶ 107.  Parroting the elements of the state-law claim, Plaintiff claims that these representations were false, they were known to be false or made with reckless disregard for the truth, the statements were made with the intent to induce Plaintiff to refrain from defending the foreclosure of her home, and that she justifiably acted in reliance on the misrepresentations.  Id. ¶¶ 108-111.

Although state law controls the elements of a common-law fraud claim, the Federal Rules of Procedure still dictate whether a fraud claim was sufficiently pleaded in federal court.  See Thomas v. Publishers Clearing House, Inc., 29 F. App'x 319, 323 (6th Cir. 2002).  To satisfy Rule 9(b)'s particularity requirement, which governs fraud claims, Plaintiff "must provide sufficient details regarding the time, place and content" of the allegedly fraudulent statement.  U.S. ex rel. SNAPP, Inc. v. Ford Motor Co., 532 F.3d 496, 505 (6th Cir. 2008).  Defendants claim that Plaintiff failed to meet this pleading threshold.  See Def. Br. at 17.

Plaintiff did, indeed, fail to meet Rule 9(b)'s pleading threshold.  Plaintiff repeatedly claims that Defendants represented to her that they would not begin foreclosure proceedings while the parties actively pursued loan modification.  See Compl. ¶¶ 46-47, 88, 107-108.  However, Plaintiff nowhere provides any details regarding the time or place of the statements or otherwise point to any particular statement.  Accordingly, she has failed to state a claim for fraudulent misrepresentation.  This claim is dismissed.

**F.  Slander of Title Claim**

Plaintiff alleges both common law and statutory slander of title.  See Compl. ¶ 114 (citing Mich. Comp. Laws § 565.108).  In support, Plaintiff asserts that she "took title to the subject property by Quit Claim deed."  Id. ¶ 115 (citing Ex. 1 to Compl., Compl. at 32 (cm/ecf page)).  Defendants object, noting the fact that "Plaintiff fails to allege any facts providing what actions

16

the Defendants undertook to commit[] either common law or statutory slander of title." Def. Br. at 20.

To establish either common law or statutory slander of title in Michigan, a claimant must show falsity, malice, and special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages. B & B Inv. Grp. v. Gitler, 581 N.W.2d 17, 20 (Mich. Ct. App. 1998). "[T]he crucial element is malice." Gehrke v. Janowitz, 223 N.W.2d 107, 109 (Mich. Ct. App. 1974). A slander of title claimant must show some act of express malice, which "implies a desire or intention to injure." Glieberman v. Fine, 226 N.W. 669, 670 (Mich. 1929). "Malice may not be inferred merely from the filing of an invalid lien; the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury." Stanton v. Dachille, 463 N.W.2d 479, 486 (Mich. Ct. App. 1990).

Plaintiff has left Defendants and this Court to guess at which, if any, of Defendants' alleged actions constitute a slander of title. She also fails to explain the relevance of the fact that she took title to her property via quitclaim deed. Defendants' only alleged action that maliciously communicated false information was the unspecified fraudulent misrepresentation that they were reviewing Plaintiff's loan modification review application "to induce Plaintiff to refrain from defending the foreclosure of her home." See Compl. ¶¶ 109-110. However, this false statement, even if it occurred, did not concern the legitimacy of Plaintiff's title. Plaintiff has, therefore, failed to state a claim for statutory or common law slander of title, and that count is dismissed.

### G.  Plaintiff's "Unclean Hands" Defense

Claiming that "foreclosure is both a contractual and equitable form of relief," Compl. ¶ 119, Plaintiff argues that that the doctrine of unclean hands bars the foreclosure, id. ¶ 121.  In support, Plaintiff notes "multiple instances of bad faith negotiations with Plaintiff, as well as bad faith processing of her mortgage loan and/or request for loan modification."  Id. ¶ 120.

However, enforcing a foreclosure by advertisement is not an equitable action.  Durr v. Bank of Am., NA, No. 12-11840, 2013 WL 6050140, at *7 (E.D. Mich. Nov. 15, 2003) ("A party seeking equitable relief cannot have unclean hands . . . .  However, the doctrine of unclean hands cannot be applied against Defendants because foreclosure by advertisement is not an equitable action."); Mission of Love v. Evangelist Hutchinson Ministries, No. 266219, 2007 WL 1094424, at *4 (Mich. Ct. App. Apr. 12, 2007) ("The unclean hands doctrine states that a party seeking the aid of equity must come to court with clean hands.  Here, however, defendants [mortgagees] were not seeking relief in equity.  Their title obtained through the mortgage foreclosure was based in law (in a statute).  [Mich. Comp. Laws §] 600.3201 et seq.  Thus, the unclean hands doctrine is inapplicable." (citation and emphasis in original)).  Because Defendants foreclosed by advertisement and seek no equitable relief, see Ex. 5 to Compl., at 56 (cm/ecf page), Plaintiff's unclean hands argument is rejected.[4]

---

[4] In her response brief, Plaintiff claims that "foreclosures are equitable in nature."  Pl. Resp. at 9 (citing Mich. Comp. Laws § 600.3180).  The statute cited by Plaintiff is inapplicable.  It appears in Chapter 31 of the Revised Judicature Act and provides that "[a]ctions under this chapter are equitable in nature."  (Emphasis added.)  Foreclosures by advertisement are governed by Chapter 32 of the RJA, not Chapter 31.  Likewise, the case cited by Plaintiff involved a judicial foreclosure under Chapter 31, which is equitable in nature.  See U.S. Bank Nat'l Ass'n v. Carswell, No. 320416, 2015 WL 2091747, at *6 (Mich. Ct. App. May 5, 2015).

## H.  Request for Equitable Mortgage

Plaintiff requests that this Court impose an equitable mortgage on the Property.  Compl.

¶¶ 139-140.[5]  She argues that this is appropriate "when no valid mortgage exists but some sort of

lien is required by the facts and circumstances of the parties' relationship."  Id. ¶ 139 (citing

Eastbrook Homes, Inc. v. Treasury Dep't, 820 N.W.2d 242 (Mich. Ct. App. 2012).  Plaintiff also

concedes that an equitable mortgage is "typically a remedy for creditors."  Id. ¶ 140.

Plaintiff's concession is telling; the doctrine of equitable mortgage does not apply to the

facts of her case.  An equitable mortgage exists to give effect to the parties' intent when, for

example, a written agreement fails to create the intended lien due to its legal defects, or when a

deed purports to convey a fee simple estate but the parties intended only a mortgage.  See

Eastbrook Homes, 820 N.W.2d at 251; see also Burkhardt v. Bailey, 680 N.W.2d 453, 465

(Mich. Ct. App. 2004) ("An equitable mortgage places the substance of the parties' intent over

form.").   In sum, the doctrine is intended to reconcile a misunderstanding or mistake.

Defendants note this incongruity.  See Def. Br. at 24 n.6.

Plaintiff has not pleaded facts concerning the parties' shared intent that would create a

plausible claim that she is entitled to an equitable mortgage.  Indeed, her sole argument for the

application of the doctrine appears to be the fact that she has "no recourse under [Mich. Comp.

Laws §] 600.3205(c) as it has been repealed."  Compl. ¶ 140.  Because this is insufficient, her

request for relief is dismissed.

---

[5] Plaintiff also invokes Mich. Comp. Laws § 600.3205(c), which previously permitted a court to convert a foreclosure by advertisement into a judicial foreclosure in certain circumstances. Compl. ¶¶ 135-138.   However, Plaintiff simultaneously concedes that this statute has been repealed.  Id. ¶ 138.

**I.  Request for Preliminary Injunction**

Count VI of Plaintiff's complaint demands a preliminary injunction that would toll the redemption period and enjoin her eviction.  Compl. ¶¶ 123-133.

However, "the appropriate procedure for requesting a preliminary injunction is by motion."  11A Wright & Miller, Fed. Practice & Procedure § 2949 (3d ed. 2016); see also Fed. R. Civ. P. 7 ("A request for a court order must be made by motion." (Emphasis added.)).  For this reason, the request for injunction, which is framed as a count in Plaintiff's complaint, is dismissed for failing to state a claim on which relief can be granted.

## IV.  CONCLUSION

For the reasons stated above, with respect to Plaintiff's breach-of-contract claim, Defendants' motion to dismiss (Dkt. 8) is denied.  In all other respects — including the implied covenant of good faith and fair dealing claims that accompany the breach-of-contract claim — Defendants' motion to dismiss is granted.

SO ORDERED.

Dated:  July 21, 2016                           s/Mark A. Goldsmith
    Detroit, Michigan                        MARK A. GOLDSMITH
                                 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 21, 2016.

s/Karri Sandusky
Case Manager